IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Martha S. Strong, ) | C/A No. 0:09-2101-RMG-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Martha S. Strong ("Strong"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

In September 2006, Strong applied for SSI and DIB. Strong's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 18, 2008 at which Strong appeared and testified and was represented by Jack G. Leader, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated July 25, 2008 finding that Strong was not disabled. (Tr. 8-16.)

Strong was born on May 30, 1957 and was fifty-one years old at the time of the ALJ's decision. (Tr. 103.) She has a high school education and past relevant work experience as a human resource specialist, receptionist, ticket room clerk, pharmacy technician, assistant manager of a drug

store, and order selector. (Tr. 170, 172.) Strong alleges disability since January 25, 2006 due to rheumatoid arthritis, fibromyalgia, hyperlipidemia, and depression. (Tr. 163.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 25, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, pain disorder and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
* * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
* * *
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, I am persuaded that she is limited to a sit/stand option on an occasional basis, no climbing of ladders, can only occasionally climb stairs, balance, stoop, crouch, kneel or crawl. The claimant is also precluded from a concentrated exposure to hazards such as moving machinery or unprotected heights and is limited to simple, routine repetitive tasks at a non-production pace.
* * *
6. The claimant is capable of performing past relevant work as a ticket room clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
* * *
7. The claimant has not been under a disability, as defined in the Social Security Act, from January 25, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 10-15.)

Strong filed a request for Appeals Council review which was denied on June 16, 2009, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) Strong filed this action on August 10, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner

must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUES**

Strong raises the following issues for this judicial review:

I. The ALJ did not perform the analysis of the treating and evaluation physician opinions required by 20 C.F.R. § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

II. The ALJ failed to perform an analysis of the Plaintiff's ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. § 404.1520, Fourth Circuit precedent, and the remand order of this Court.[1]

III. The ALJ did not explain his findings regarding Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

(Pl.'s Br., ECF No. 15.)

**DISCUSSION**

**A.  Dr. Sam Stone**

Strong first argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Sam Stone. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given

---

[1] Based on the record before the court, it does not appear that this matter has been previously remanded by the district court.

controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

By letter dated August 22, 2006, Dr. Stone stated that he was treating Strong for rheumatoid arthritis, fibromyalgia, hyperlipidemia, and depression. Dr. Stone indicated that Strong had attempted to work but was unable to do so due to her overall condition. Dr. Stone opined that Strong could not sit for longer than an hour at a time due to her back pain, that she could not walk more than thirty minutes at a time due to pain in her knees and back, and that she could not squat, bend, or stoop, or lift more than ten pounds. Dr. Stone indicated that Strong was compliant with her medications. Finally, Dr. Stone stated that Strong was permanently and totally disabled. (Tr. 230.)

In an assessment, Dr. Stone opined that Strong was depressed with poor concentration and memory and would have moderate work-related functional limitations due to her mental condition. (Tr. 240.) Further, on June 14, 2008, Dr. Stone opined in a Fibromyalgia Medical Evaluation Form that Strong met the "American Rheumatological criteria for fibromyalgia." (Tr. 351.) Dr. Stone indicated that Strong's symptoms included: multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, subjective swelling, irritable bowel syndrome, depression, incoordination, numbness and tingling, anxiety, panic attacks, frequent severe headaches, chronic fatigue syndrome, and multiple trigger points. (Tr. 352.) Dr. Stone stated that Strong experienced pain daily and that

her pain level was seven to eight out of ten. He also indicated that Strong was not a malingerer. (Tr. 353.) Dr. Stone noted that Strong's pain would constantly interfere with attention and concentration and that she was severely limited in her ability to deal with work stress. (Tr. 354.) Dr. Stone indicated that Strong (1) could walk one-fourth to one-half of a city block without rest or severe pain, (2) could sit, stand, and walk less than two hours at one time; (3) would require periods of walking during an eight-hour day; (4) needed a job that permitted shifting positions at will from sitting, standing, or walking; (5) would need to lie down at unpredictable intervals during her work shift; (6) could occasionally lift less than ten pounds, but never more than that; (7) had significant limitations in reaching, handling, and fingering; (8) could only use her hands for twenty percent of the workday, her fingers (fine manipulation) for fifteen percent of the workday, and her arms (reaching—including overhead) for twenty percent of the workday; (9) did not have the ability to bend and twist at the waist; and (10) would likely miss more than three days of work per month. (Tr. 355-57.) Finally, Dr. Stone indicated that Strong's symptoms included many of the symptoms identified on the Fibromyalgia Medical Evaluation Form. (Tr. 358.)

The ALJ found that Dr. Stone's disability statements were entitled to "little weight as they are not supported by the treatment records of record." (Tr. 14.) In explaining this conclusion, the ALJ relied on several findings from Strong's consultative examination. Specifically, the ALJ pointed out that Dr. Tolulola Adeola, the consultative examiner, indicated that Strong continued to work for a month after she was diagnosed with fibromyalgia. Dr. Adeola also indicated that Strong's gait was normal, she was able to perform heel and toe walking, there was no tenderness or swelling of the metacarpophalangeal or interphalangeal joints, dexterous movement of both hands was normal, and lumbar flexion was fifteen degrees. (Tr. 15.) However, the court observes that even with those findings, Dr. Adeola opined that Strong was not capable of maintaining gainful

employment at that time, but that with "maximization of therapy" Strong may be able to return to sedentary work. (Tr. 248.) The ALJ also gave this portion of Dr. Adeola's opinion little weight.

Based on a review of the record and the ALJ's decision, the court cannot say that the ALJ's decision to discount Dr. Stone's opinion on this basis is supported by substantial evidence. While some of the evidence pointed out by the ALJ may limit the period in which Strong may be entitled to benefits, the ALJ failed to address treatment notes of Dr. Stone supporting his opinion that Strong was unable to work and suffered from numerous functional limitations and restrictions. For example, the ALJ mentioned one treatment record from Dr. Stone dated November 21, 2006 that stated "[s]he seems to be doing pretty good with no major problems." (Tr. 242.) However, a review of later treatment notes from Dr. Stone shows statements that Strong was suffering from significant pain in her back and joints. In March 2007, Strong reported that she was not doing well and was still having a lot of pain in her joints. Dr. Stone observed that Strong's "joints are very, very stiff and sore" and noted that Strong "ha[d] trouble getting on and off the table." (Tr. 325.) In October 2007, Dr. Stone indicated that Strong had low back pain and found that she was "very tender in the lumbosacral area with plus/minus straight leg raises." (Tr. 316-17.) An October 2007 x-ray indicated that "L5 is transitional in nature and has a right sided pseudoarthrosis at the sacrum. Moderately severe arthritic changes involve the right sided pseudoarthrosis." (Tr. 335.) Further, a CT scan of Strong's lumbar spine from November 2007 revealed mild to moderate degenerative changes in the sacroiliac joint with extensive degenerative changes in one area. (Tr. 302.) These notes and records undermine the ALJ's finding that Dr. Stone's opinions were not supported by Strong's treatment records and the ALJ's finding that Strong could perform light (as opposed to sedentary) work. At the very least, the ALJ's failure to address the portions of Dr. Stone's treatment notes that appear to support Strong's alleged inability to work and the limitations suggested by Dr.

Stone prevents the court from determining that the ALJ's decision to reject a treating physician's opinion and find that Strong was capable of light work is supported by substantial evidence and consistent with controlling law. Accordingly, while the court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]," Craig, 76 F.3d at 589, the court is constrained to remand this issue for further explanation and review of Dr. Stone's opinion.

**B.     Dr. Tolulola Adeola**

As stated above, the ALJ also gave little weight to the portion of the opinion of Dr. Adeola, the consultative examiner, which stated that Strong was not capable of maintaining gainful employment. (Tr. 14.) The ALJ gave this opinion little weight for the same reasons that he gave Dr. Stone's opinion little weight. In light of the court's recommendation that this matter be remanded for further consideration of Dr. Stone's opinion, the court finds it appropriate for the ALJ to also further evaluate Dr. Adeola's opinion and consider all of the medical records from these witnesses.

**C.     Remaining Issues**

The reconsideration of the treating physician's opinion and the consultative examiner's opinion may affect the ALJ's determination as to the subsequent steps of the sequential evaluation. Therefore, the court cannot determine whether the ALJ's conclusions as to the remainder of the sequential process are supported by substantial evidence. Further, the ALJ's reconsideration of the above issues may render Strong's remaining issues moot. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

# RECOMMENDATION

The court cannot determine based on the record before it whether the Commissioner's decision is supported by substantial evidence. Therefore, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 18, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).